**In re Anonymous No. 94 D.B. 87**

Disciplinary Board Docket no. 94 D.B. 87.

TUMOLO, Member, April 25, 1989 —

## HISTORY OF PROCEEDINGS

Respondent is a 34-year-old [   ] County attorney admitted to practice law in the Commonwealth of Pennsylvania in 1986.

On December 22, 1987 a petition for discipline

was filed alleging a violation of the following Disciplinary Rules of the Code of Professional Responsibility:

(A) D.R. 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit or misrepresentation;

(B) D.R. 1-102(A)(6), dealing with conduct adversely reflecting on an attorney's fitness to practice law;

(C) D.R. 6-101(A)(3), dealing with a lawyer neglecting a legal matter entrusted to him;

(D) D.R. 9-102(A), dealing with proper maintenance and use of a lawyer's trust account for entrusted funds of clients; and,

(E) D.R. 9-102(B)(4), requiring a lawyer to promptly pay or deliver to his client, as requested by the client, the funds, securities, or the properties in the possession of the lawyer which the client is entitled to receive.

After respondent filed his answer, on April 25, 1988, the hearing committee took evidence on those factual matters which were not stipulated.

On January 26, 1989, the hearing committee filed a majority report finding that respondent had violated all of the Disciplinary Rules charged and recommending that respondent be subject to a private reprimand. The dissenting hearing committee member recommended a dismissal of all charges.

On February 15, 1989, petitioner filed a brief on exceptions to the recommended discipline. The petitioner's position is that the removal of a client's money should require a discipline of at least a two-year suspension, if not a disbarment.

On February 17, 1989, respondent filed a brief on exceptions which requested that if discipline was to be imposed at all, it should be in accord with the majority recommendation of the hearing committee.

Arguments were heard before a panel of the Disciplinary Board on March 29, 1989, and the matter was adjudicated by the Disciplinary Board on April 7, 1989.

## FACTUAL BACKGROUND

Respondent became the holder of escrowed monies pursuant to an escrow agreement entered into on or about April 18, 1987. The facts show that a mortgage had been given by a property owner named [A] to [Mrs. B], who subsequently assigned that instrument to her husband. The [Bs] then executed an assignment of that instrument to [C], and these parties deemed it necessary for [C] to escrow $2,100 of the consideration for the assignment to insure that certain real estate taxes were paid. That is, it might be that the property owner or the [Bs] might pay the taxes, in which case the [Bs] would be entitled to the $2,100; or it might be that [C] would decide in order to protect her interest to pay the taxes, and thereby be entitled to a refund of part or all of the $2,100. Respondent's function as an escrow holder was to insure that those funds not be released for any reason other than to fulfill the purposes of the escrow agreement.

On June 10, 1987, respondent issued a check from his escrow account in the amount of $2,000 made payable to himself. These funds were used by respondent to pay his office expenses, a deposit on an engagement ring, and for a trip to Disney World in Florida. The only factual controversy in this adjudication arises at this point. Respondent contends he contacted [D], the husband, manager, and attorney-in-fact of [C], and asked for $2,000. At that time, the facts show that respondent was engaged to [D's] daughter and that there was a very close

personal and business relationship between the two. Respondent testified that [D] told him to use the money in the "[B] escrow account," which respondent did. [D] has always denied this, contending he was never asked for any such permission, nor did he ever grant that authority. This might seem to raise the issue of [D's] bias toward respondent, all of which is graphically illustrated in Judge [E's] opinion in the United States District Court for the [  ] District of Pennsylvania at Civil Action no. [  ], but the board believes that this adjudication does not depend on the credibility of [D]. The trial testimony shows that respondent testified that [D] never indicated to him that he was going to pay the taxes. That is, even under respondent's testimony, he at most was told by [D] that he could take the money from the "[B] escrow account." Therefore, even accepting respondent's version of the facts, the question would become whether an attorney governed by the Code of Professional Responsibility could under the facts of the escrow agreement accept the advice of one of the participants, without any proof that the reason for the escrow had been discharged (i.e., payment of the taxes) and take the money. The answer is clearly no. The reason for the escrow was to insure that both the [Bs] and [C] were protected against the failure to pay real estate taxes. Accepting the advice of either party to remove escrowed funds without the reasons for the escrow agreement having been met immediately presents the attorney with a very substantial likelihood that exactly what occurred herein would happen.

That is, respondent removed the funds from his trustee account on June 10, 1987. Within three weeks of that date, the [Bs] provided a tax receipt showing that the owner of the property, [A], had

paid the taxes. This made the [Bs] immediately entitled to the escrowed funds. But the escrowed funds did not exist because they had been improperly disbursed.

When the [Bs] questioned why they had not received the $2,100 the respondent told them in late June 1987 that he needed [D] to approve the disbursement. In fact, there was nothing to disburse in late June 1987.

On August 7, 1987, respondent did issue a check from his regular business account in the amount of $2,149 made payable to [Mr. B]. This amount accounted for the escrowed funds, plus interest. However, respondent was clearly out of trust and in violation of the escrow agreement for a period of at least two months.

It would understate the factual background of this matter to delete any mention of the bias and hostility of the witnesses presented to prosecute this claim. There really could not be a better presentation of that bias than is shown in the opinion of Judge [E], *supra*. That opinion in part states:

"For approximately one year, the relationship between [D] and [respondent] was unassailable. Where amity and close business relationships existed, problems began and [respondent] threw [D] out of their shared offices. As a result, [D] became so displeased that in August 1987, he started a systematic avalanche upon [respondent's] activities intended to destroy [respondent], his law business, his clients and all who associated with him; [D] even began to inflict suffering and obstructions to his own daughter and grandchildren. At first, [D] withdrew files of cases by the aid of [F] and others. [D] began a campaign of communicating with the clients concerning the disreputability and criminality of [respondent], in creating dissatisfactions by clients, creditors and busi-

néss associates, in causing sufficient provocations in them to make grievance charges to the Pennsylvania Supreme Court Grievance Commission, as well, on a wholesale scale."

In addition, Messers. [G] and [F] were former employees of [respondent] who were fired. There is no question that Judge [E's] graphic description of [D's] vendetta against his son-in-law is unfortunate. And there is no doubt that this board views with extreme scrutiny an allegation brought under such circumstances. But after careful review of the record, and even accepting respondent's testimony, the board finds that petitioner has met its burden of proof.

### Conclusions as to Disciplinary Rule Violations

The board finds that in failing to promptly deliver to the [Bs] the money to which they were entitled in late June 1987, that the petitioner violated rule 9-102(B)(4).

The board finds that in representing to the [B] that he had to have the permission of [D] to deliver the escrowed funds to the [Bs], when at that time there were in fact no funds escrowed, respondent violated rule 1-102(A)(4).

The board finds that in violating the integrity of his trust account when respondent removed $2,000 for personal purposes he violated rule 9-102(A).

The board finds that respondent's conduct adversely reflects on his fitness to practice law and violates rule 1-102(A)(6).

The board finds no evidence of neglect on this record. Rather, all of the conduct of respondent was intentional, and is encompassed within the far more serious violations for which he is liable, and which are set forth above. Therefore, the board dismisses the charged violation of rule 6-101(A)(3).

## CONCLUSION

The board is not unmindful of the fact that respondent is a newly admitted attorney, with no past disciplinary history. The facts clearly show that his inexperience did not allow him to disengage himself from the entanglement with people who were very likely to lead him into disciplinary, if not other, violations. Fortunately, all of the escrowed money, together with interest, was properly delivered within a short period to the persons rightfully entitled to it. In fact, the [Bs] have made no charge against respondent to this board. Pertinent to that board's adjudication of the discipline to be imposed are the following: all the money and accrued interest was delivered to the [Bs] within about one month of their demand; this was accomplished before any action by the Office of the Disciplinary Counsel; there is no past disciplinary history; and, respondent has had to conduct himself professionally under trying circumstances of his father-in-law's vendetta yet has not otherwise gone astray. All of these factors indicate respondent is not a danger to the public, the profession or the court. The primary objective of the disciplinary system is to protect, not punish.

Under the unique facts of this case only, the board will accept the recommendation of the majority of the hearing committee and respondent shall receive a private reprimand.

Messrs. Mundy and Padova dissent and would impose public discipline.

## ORDER

And now, April 25, 1989, upon consideration of the report and recommendation of Hearing Committee [ ] and dissenting opinion filed January 26, 1989; it is hereby ordered and decreed, that the said

[respondent] of [   ] County, be subjected to private reprimand by the Disciplinary Board of the Supreme *Court* of Pennsylvania as provided in rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this board. Costs are *to be paid* by respondent.